☑ Original  ☐ D



CLERK'S OFFICE
A TRUE COPY
Sep 27, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. **23-M-471 (SCD)** |
| *or identify the person by name and address)* | ) | |
| Three (3) Apple cellular iPhones further | ) | **Matter No.: 2023R00308** |
| described in Attachments A & B | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     10-11-23     *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Stephen C. Dries     .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     9-27-23. 1:35 pm          *Stephen C. Dries*
                                                                                    *Judge's signature*

City and state:     Milwaukee, WI          Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name(s) of any person(s) seized: |
|---|
| |

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

Three cellular phones further described as:

1.      Blue Apple iPhone, Milwaukee Police Department inventory # 23023401, Item #13 **(Target Cell Phone #1)**

2.      Black Apple iPhone, model A1660 FCC ID: BCG-E3085A Milwaukee Police Department inventory #23023401, Item #1 **(Target Cell Phone #2)**

3.      Black Apple iPhone Cell Phone, unknown model, MPD inventory #23023401, Item #7 **(Target Cell Phone #3)**

**<u>ATTACHMENT B</u>**

**Particular Things to be Seized**

1.      All records on the three (3) cellular phones listed under MPD inventory 23023401, Items 1, 7, and 13 related to violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud), which are being committed, or will be committed, between the dates of October 15, 2018 to the present, by Torion R. BROOKS, Todrian M. FRANKLIN, Michael L. WILLIAMS, Jaylin K. ALEXANDER, and others known and unknown. Items to be seized include:

  a.  lists of contacts with any identifying information;

  b.  photographs, videos, or other media storage connected to drugs and firearms;

  c.  types, amounts, and prices of drugs and firearms purchased/sold;

  d.  any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

  e.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.      Any and all financial records connected to the purchase/sale of firearms or drugs;

3.      Documentation establishing the identity of the individuals in control of the residences;

2

4.      Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

5.      Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6.      Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7.      All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

8.      Lists of firearm and drug customers and related identifying information;

9.      Personal address books, telephone bills, photographs, letters, personal notes, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10.     Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11.     Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12.     Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called

3

numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

13.     Evidence of indicia of occupancy, residency, or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

14.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15.     Records evidencing the use of the Internet Protocol address, including:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4



CLERK'S OFFICE
A TRUE COPY
Sep 27, 2023
s/JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Three (3) Apple cellular iPhones further
described in Attachments A & B

)
)
)
)
)
)

Case No. 23-M-471 (SCD)

**Matter No.: 2023R00308**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A); 922 (g)(1); 922(d)(10); 933; 924(c); 371; 1341; | Engaging in a firearms business without a license; unlawful possession of firearms and ammunition; sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime; trafficking firearms; conspiracy; mail fraud; |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GABRIEL LOWRANCE Digitally signed by GABRIEL LOWRANCE
Date: 2023.09.27 11:25:02 -05'00'

*Applicant's signature*

SA Gabriel Lowrance, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone

*(specify reliable electronic means).*

Date: 9-27-23

*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Gabriel Lowrance, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since January 2020. I have been employed as a full-time law enforcement officer for approximately fifteen years.  Prior to employment with ATF, I served as a police officer with the Robinson Police Department in Illinois and the Lake Havasu City Police Department in Lake Havasu City, Arizona.

3.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud), are being committed or will be committed by Torion R. BROOKS, Todrian M. FRANKLIN, Michael L. WILLIAMS, Jaylin K. ALEXANDER, and others known and unknown.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

5.     The property to be searched is three (3) cellphones which can be further identified as the following:

     a. Blue Apple iPhone, unknown model, Milwaukee Police Department inventory # 23023401, Item #13 (Target Cell Phone #1)

     b. Black Apple iPhone, model A1660 FCC ID: BCG-E3085A Milwaukee Police Department inventory #23023401, Item #1 (Target Cell Phone #2)

     c. Black Apple iPhone, unknown model, MPD inventory #23023401, Item #7 (Target Cell Phone #3)

6.     The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

### BROOKS'S PURCHASE OF FIREARM PARTS

7.     On August 24, 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Gabriel Lowrance initiated a case related to a complaint made to the Milwaukee Police Department by CBC Industries, a business located in North Charleston, South Carolina. CBC Industries is a manufacturer of firearms and firearms accessories which are sold through their website.

2

8.    The complaint from CBC industries was regarding approximately 31 attempted purchases, which totaled approximately $35,000.00 of AR-15 upper receivers and other AR-15 accessories. The purchases were attempted through CBC's website, by an individual named Torion R. BROOKS. The attempted purchases took place between 7/27/2023 and 8/22/2023. The purchases were flagged as possibly fraudulent due to having billing addresses which were different from the delivery addresses. The records indicated billing addresses from approximately fourteen (14) different states within the United States, and the shipping addresses were: 1526A W. Congress Milwaukee, WI; 4710 N. 30th St, Milwaukee, WI; and 3219 N 46th St, Milwaukee, WI.

9.    CBC Industries provided a copy of email communication between CBC industries and billyj1730@gmail.com. This email address was used in attempted purchases two (2) times on or about 7/27/23 and one (1) time on or about 8/7/23. In an email communication dated 7/24/2023, an email sent by CBC Industries requested a front and back photo of identification to verify the purchaser's identity to combat fraudulent purchases and activity. In response, the user of billyj1730@gmail.com responded by sending front and back photos of an Arizona driver's license for Torion Rashaud BROOKS (DOB 2000) with the address area blacked out. BROOKS had contact with the Milwaukee Police Department on 5/25/2023 where BROOKS provided an address of 19721 Emperor Blvd Queen Creek, AZ, 85142.  Your affiant also confirmed this address after reviewing AZ driver's license records related to BROOKS.

10.    Of the approximately 31 attempted transactions, two (2) were completed and delivered to addresses in Milwaukee, WI. The first completed transaction was an order of 6 AR-15 upper receivers was placed on or about 7/24/2023, which totaled approximately $990.00. These items were shipped by CBC industries via Federal Express to Torion BROOKS at 1526A

3

W. Congress, Milwaukee, WI and was delivered and signed for on 7/31/2023. When an AR-15 upper receiver component is paired with an AR-15 lower receiver, the items may readily be converted to a working firearm.

11.    The second completed order from CBC Industries was placed on or about 8/18/2023, and five (5) items related to AR-15 and AR-15 parts and accessories, totaling approximately $1,170.00, were delivered to 3219 N 46th St, Milwaukee, WI.

### BROOKS DISCUSSED ASSEMBLING FULL FIREARMS AND NARCOTICS DEALING ON JAIL CALLS

12.    Your affiant reviewed jail phone calls from Fox Lake Correctional Center, located in Fox Lake, WI.  On 7/29/2023 a phone call is made to the phone number 872-243-4797. Your affiant knows this phone number to be associated Torion BROOKS through CBC Industries records and databases available to law enforcement. Based on the examination of several jail calls, your affiant recognized the voices placing the call as "Cortez Brooks" (hereafter referred to as Cortez), and the person receiving the call is believed to be Torion BROOKS. On the 7/29/23 jail call, BROOKS stated he is "building these guns" and has learned how to build the AR-15 rifles. BROOKS also spoke about other firearms he was building and described them as "little ones" and "real small", leading your affiant to believe he is also speaking about AR-15 pistols. During the call, BROOKS described the firearms as "ghost guns" and described them as able to fit under a shirt. Within the same call, Cortez asked BROOKS if he is "making those mother fuckers yourself" or "breaking them down." BROOKS stated he is "making the mother fuckers" and is getting the parts "offline."  BROOKS stated if he sells them, he is getting $1,500 and they do not cost him more than $300-$400 to purchase.  BROOKS stated at the time he was not trying to sell them and was looking to "stock up on my shit". BROOKS further stated he has been

4

spending his time "putting them together", leading your affiant to conclude he is converting the AR-15 receivers into fully functioning firearms. Your affiant is aware that the slang term "ghost gun" describes a privately made firearm which has no serial numbers. These privately manufactured firearms have become sought after by those engaged in criminal activity because they are difficult for law enforcement to trace back to a specific possessor.

13.     Within the same call, Cortez also instructs BROOKS to "fuck with" an unknown individual. Cortez asks if "they" are five inches. BROOKS stated they are the same size as a "micro draco" and shoot 7.62 and 5.56 and the same bullet as an "AK". Your affiant knows 7.62 and 5.56 to be calibers of ammunition that can be fired by an AR-15.

14.     Within the same call, Cortez and BROOKS discuss apparent narcotics trafficking. Cortez stated he wished BROOKS still had the "ice connect." Your affiant is aware through training and experience "ice" to be a term to reference methamphetamine. Your affiant also knows the term "connect" to be a term to reference a source for narcotics. Cortez also asked BROOKS about an individual by the name "Rocco." BROOKS stated he had previously gone "all the way out of town" to go get "some shit" for "Rocco." BROOKS described this as being "hours away." Cortez asked if BROOKS knew Rocco's "plug" Your affiant knows "plug" to be a term to reference a source of narcotics.

15.     During this call, Cortez and BROOKS discuss where BROOKS is in Milwaukee. BROOKS stated he is on 14th near Atkinson. Your affiant knows BROOKS to associate with individuals who have previously resided at 3900 N. 14th St. in Milwaukee which is approximately two blocks north of the intersection of 14th St and Atkinson St. in Milwaukee. BROOKS also stated he is near 29th and Burleigh. Your affiant also knows BROOKS to have used the address 3219 N 46th St, Milwaukee, WI for delivery of firearm parts and accessories.

5

16.     On 8/20/2023 Cortez called BROOKS at 872-243-4797. During the call, BROOKS tells Cortez he is "waiting on a package right now." Your affiant is aware of a delivery from CBC Industries of firearm parts and accessories was delivered to Torion BROOKS at 3219 N 46th St, Milwaukee, WI on 8/20/2023. BROOKS stated again he has been "building these mother fuckers" and has acquired tools, drills, and does not have to go into the "store" anymore. BROOKS stated he has everything he needs, and he was "just sitting in the crib doing that shit."

17.     Within the same call, Cortez asked BROOKS if BROOKS had contacted an unknown individual. BROOKS stated he has not spoken to the individual in approximately one week. BROOKS further stated, "I got 30 of them things for you again." Your affiant is aware at the time of the phone call BROOKS had made approximately thirty attempted orders of firearms parts and accessories from CBC Industries.

18.     Within the same call, BROOKS stated he is trying to sell one (1) "of them mother fucking things". When asked by Cortez how much they are being sold for, BROOKS stated the "Lowest I will take is twelve." Cortez asked why BROOKS does not "pull up on dude" to which BROOKS stated individuals "act like they want to buy". BROOKS also stated he knows an individual who already had "the lower" and wanted the "upper part." Your affiant is aware the orders from CBC Industries by BROOKS included AR-15 upper receiver components and when paired with a lower receiver, the items can be readily converted into a firearm. Cortez instructs BROOKS on who to contact an unknown individual. BROOKS stated, "every time they come it's all cash."

19.     On 8/20/2023 a Cortez placed a second phone call to BROOKS who was using 872-243-4797. BROOKS stated he "just got my mother fucking package." Your affiant is aware,

6

BROOKS received a package from CBC Industries on the same date at 3219 N 46th St, Milwaukee WI.

20.     Your affiant reviewed a jail call which occurred on 1/11/2023, in which Cortez called BROOKS who was using 872-243-4797. During this call BROOKS stated he is in an airport and has been "up for 24 hours" and is on his way to "Houston" to go grab that "drank." Your affiant knows "drank" to be a term to reference a drink containing codeine syrup. Both individuals discuss "bars" and "percs". Your affiant knows these terms to be a reference to prescription opioid pills. BROOKS stated he has "got a guy" that goes to pharmacies in "small ass towns" for "percs." Cortez asks BROOKS to "lock in" the individual. BROOKS stated he already has the individual "locked in." Cortez inquired about "suboxone strips." Your affiant knows these to be prescription opioids which come in strip form. Cortez and BROOKS discussed how to obtain opioids and who to sell them throughout the phone call. Additionally, both Cortez and BROOKS discussed "dog" which is "untouched." Your affiant knows "dog" to be a term to reference heroin. BROOKS stated he had previously taken "Bo" a "sample of that shit." Cortez and BROOKS then discussed prices for "dog" and who they can sell it to. Cortez and BROOKS both discuss an individual they have both contacted. Cortez stated he does not want BROOKS "dealing and dabbling" and wants others to do it.

**BROOKS, KEVIN WILLIAMS, and JAYLIN ALEXANDER**

21.     Your affiant also reviewed Milwaukee (WI) Police Department records related to a traffic stop in May of 2023. Torion BROOKS was the driver, and the passenger was Kevin D. WILLIAMS (DOB 2000). The vehicle was registered WILLIAMS at THE FOLLOWING ADDRESS: 10282 W. Fountain Ave, #1304, Milwaukee, WI. In reviewing the Milwaukee Police Department bodycam footage from the traffic stop, your affiant saw BROOKS was the

7

driver, and he identified himself by his Illinois driver's license and stated that he was "visiting" but was on his way to "a job."

22.     Your affiant discovered that WILLIAMS's residence is within the same building as Jaylin ALEXANDER (DOB 1998, 10282 W. Fountain Ave, #1300, Milwaukee WI).

**JAYLIN ALEXANDER AND THE THREE TARGET CELL PHONES**

23.     Your affiant reviewed Milwaukee Police Department reports related to an armed robbery complaint involving Jaylin K. ALEXANDER (B/M, dob 1998, 10282 W. Fountain Ave, #1300, Milwaukee WI) as a suspect. The armed robbery took place in April of 2022 near 7151 W. Beckett Milwaukee, WI. ALEXANDER is alleged to have robbed the victim, an individual, while armed with what the victim described as an "M4 style rifle." The victim also identified a second individual as "Anthony" who was armed with what the victim described as a "black handgun."  Both individuals used vehicles to box the victim vehicle in, and allegedly stole a wallet from the victim's vehicle.

24.     Your affiant reviewed Milwaukee (WI) Police Department (MPD) reports related to ALEXANDER'S arrest warrant for armed robbery, and a search warrant at 10282 W. Fountain Ave, #1300, Milwaukee, WI, which were executed on 7/19/2023.  During this incident, ALEXANDER was observed through a window by MPD inside the residence and entering the southeast bedroom. ALEXANDER was arrested as he exited the residence and was in possession of a cellphone and keys to the residence at 10282 W. Fountain Ave, #1300.  MPD officers would later use the keys found on ALEXANDER's person to make entry into the residence to conduct the search warrant. The cellphone on ALEXANDER's person was one (1) blue Apple iPhone, unknown model, Milwaukee Police Department inventory # 23023401, Item #13 (Target Cell Phone #1).

8

25.     Officers executed a search at the residence.

26.     In the northwest bedroom, officers located bags of suspected cannabis and two (2) Wisconsin ID cards for ALEXANDER in a black tote. Officers also located ALEXANDER's diploma, and pieces of mail addressed to ALEXANDER to include a WE energies bill for 10282 W Fountain Av #1300. It should be noted, other pieces of United States mail were in the kitchen and the living room of the residence bearing the Fountain Ave address for ALEXANDER. In the same bedroom, where ALEXANDER's identifiers were located and where he had access, officers located one Black Apple iPhone, model A1660 FCC ID: BCG-E3085A Milwaukee Police Department inventory #23023401, Item #1 (Target Cell Phone #2), which was behind a bed.

27.     In the southeast bedroom, officers found a wallet containing cards for Anthony A. PUGH Jr. (B/M DOB 1997), a social security card, and United States Postal Service Priority mail for PUGH. This bedroom is where officers saw ALEXANDER enter the bedroom only minutes before they executed the search warrant. ALEXANDER had access to this bedroom and was observed by police officers in that bedroom on the day that the search warrant was executed. Also, in the bedroom where officers had just observed ALEXANDER, they located one black Apple iPhone, unknown model, contained with black case "4PF" imprinted on case, MPD inventory #23023401, Item #7 was located during the search warrant in the southeast bedroom, on a nightstand (Target Cell Phone #3).

28.     In the southeast bedroom, police recovered an un-marked black and green AR-15 pistol equipped with a drum style magazine, a Century Arms AK pistol, a Smith & Wesson revolver, and ammunition. In the northwest bedroom, MPD located suspected marijuana, Tetrahydrocannabinol (THC) vape cartridges, and suspected "Magic Psilocybin Mushrooms."

9

Throughout the living room, kitchen, and the two bedrooms, officers located packaging materials, a digital gram scale, plastic sandwich bags/vacuum sealed bags, and a large quantity of U.S. Currency. The recovered items indicate street-level narcotics distribution, as well as using the residence to manufacture, store, and sell narcotics.

29.     The firearms and illegal narcotics that were in the residence were visible and accessible to any person who entered the residence. The entire residence was open and accessible to ALEXANDER or Pugh, and their identifiers were in several places within the residence. The Affiant is aware that drug users and armed robbers will often keep their firearms and illegal narcotics in their residences and within proximity to each other for protective reasons.

30.     From the police search, it appears that the two residents at the location were ALEXANDER and Pugh. The Target Cell Phones were in a shared residence where multiple, visible pieces of evidence of firearm crimes and drug trafficking were located. Because it is a shared residence, and the tenants had access to all parts, it is difficult if not impossible to verify, without examining the cell phones, who owned or shared the Target Cell Phones.

31.     The devices are currently in the lawful possession of the Milwaukee (WI) Police Department.  The devices came into the Milwaukee Police Department's possession in the following way: seized incident to arrest during the service of an arrest warrant for armed robbery and a subsequent search warrant of the residence at 10282 W. Fountain Ave, #1300, Milwaukee, WI, which were executed on 7/19/2023.  Therefore, while the Milwaukee Police Department might already have all necessary authority to examine the devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the devices will comply with the Fourth Amendment and other applicable laws.

10

32.     The devices are currently in storage at the Milwaukee Police Department Property Control Section located at 2620 W. Wisconsin St, Milwaukee, WI.   In my training and experience, I know that the devices have been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the Milwaukee Police Department.

33.     Your affiant also reviewed Milwaukee (WI) Police Department records related to a traffic stop in May of 2023. Torion BROOKS was contacted during the stop of a vehicle which was registered to Kevin D. Williams (B/M, DOB 6/25/2000) at 10282 W. Fountain Ave, #1304, Milwaukee, WI. In reviewing the Milwaukee Police Department bodycam footage from the traffic stop, your affiant saw that BROOKS was identified as the driver of the vehicle. BROOKS identified himself by Illinois driver's license and stated he was "visiting" but was on his way to "a job."

34.     Your affiant discovered that WILLIAMS residence is within the same building as ALEXANDER. Your affiant reviewed MPD reports, photos and inspected the AR-15, which was recovered during the search warrant at ALEXANDER'S residence, and it appeared to be similar in size and caliber as the ones described by BROOKS in previously reviewed jail phone calls, and parts ordered from CBC.

35.     Your affiant reviewed Milwaukee Police Department reports related to an armed robbery complaint involving Jaylin K. ALEXANDER as a suspect. The armed robbery took place in April of 2022 near 7151 W. Beckett Milwaukee, WI. ALEXANDER is alleged to have robbed an individual while armed with what the victim described as an "M4 style rifle." The victim also identified a second individual as "Anthony" and was armed with what the victim described as a "black handgun."

11

36.     Your affiant reviewed Milwaukee (WI) Police Department (MPD) reports related to ALEXANDER'S arrest warrant for armed robbery, and a search warrant at 10282 W. Fountain Ave, #1300, Milwaukee, WI, which were executed on 7/19/2023. During the execution of the warrants, police made contact at the residence with Anthony A. Pugh Jr (B/M, dob 1997). During that search, police recovered an un-marked black and green AR-15 pistol equipped with a drum style magazine, a Century Arms AK pistol, and one Smith & Wesson revolver.  MPD also located suspected marijuana, Tetrahydrocannabinol (THC) vape cartridges, and suspected "Magic Psilocybin Mushrooms", packaging, a digital gram scale, plastic sandwich bags/vacuum sealed bags, and a large quantity of U.S. Currency, and believed this to be indications of street level distribution and not personal use, as well as using the residence to manufacture, store and sell narcotics.

37.     Your affiant reviewed Milwaukee Police Department reports related to ALEXANDER'S arrest warrant for armed robbery, and a search warrant at 10282 W. Fountain Ave, #1300, Milwaukee, WI, which were executed on 7/19/2023. During the execution of the warrants, police made contact at the residence with Anthony A. Pugh Jr. (DOB 1997). During that search, police recovered an un-marked black and green AR-15 pistol equipped with a drum style magazine, a Century Arms AK pistol, and one Smith & Wesson revolver. MPD obtained three (3) cellphones, which are in Milwaukee Police Department custody under inventory # 23023401. A blue Apple iPhone (**Target Cell Phone #1**) was found on Jaylin ALEXANDER's person. A Black Apple iPhone model A1660 FCC ID: BCG-E3085A (**Target Cell Phone #2**) was recovered from the northwest bedroom. Item #7, a black Apple iPhone, unknown model, contained with black case "4PF" imprinted on case (**Target Cell Phone #3**) was in the southeast

bedroom. Also recovered from the residence was United States currency, marijuana, and psilocin.

38.     Target Cell Phones 1, 2, and 3 are currently in the lawful possession of the Milwaukee (WI) Police Department after they were seized during the search warrant at ALEXANDER's residence. While the Milwaukee Police Department might already have all necessary authority to examine the devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the devices will comply with the Fourth Amendment and other applicable laws.

39.     The devices are currently in storage at the Milwaukee Police Department Property Control Section in Milwaukee, WI. In my training and experience, I know that the devices have been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the Milwaukee Police Department.

40.     Your affiant reviewed MPD reports, photos and inspected the AR-15, which was recovered during the search warrant at ALEXANDER'S residence, and it appeared to be similar in size and caliber as the ones described by BROOKS in previously reviewed jail phone calls, and AR-15 parts that he ordered from CBC.

## CONCLUSION

41.     Your affiant believes there is probable cause to search Target Cell Phones 1, 2, and 3 because the cell phones were located next to firearms suspected of being used in an armed robbery and the cell phones were located next to illegal narcotics. Furthermore, one of the firearms is suspected of being assembled by BROOKS and transferred to ALEXANDER.

13

## **TECHNICAL TERMS**

42.    Based on my training and experience, I use the following technical terms to convey the following meanings:

  a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the

14

camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

15

extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

16

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending, and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses,

17

while other computers have dynamic—that is, frequently changed—IP addresses.

    i.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

43.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

44.    There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

    a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

18

b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

45.   Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

19

portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information

20

necessary to understand other evidence also falls within the scope of the warrant.

       e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

46.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

47.    Manner of execution.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

21

## ATTACHMENT A

### Property to Be Searched

Three cellular phones further described as:

1.    Blue Apple iPhone, Milwaukee Police Department inventory # 23023401, Item #13 **(Target Cell Phone #1)**

2.    Black Apple iPhone, model A1660 FCC ID: BCG-E3085A Milwaukee Police Department inventory #23023401, Item #1 **(Target Cell Phone #2)**

3.    Black Apple iPhone Cell Phone, unknown model, MPD inventory #23023401, Item #7 **(Target Cell Phone #3)**

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

1.    All records on the three (3) cellular phones listed under MPD inventory 23023401, Items 1, 7, and 13 related to violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud), which are being committed, or will be committed, between the dates of October 15, 2018 to the present, by Torion R. BROOKS, Todrian M. FRANKLIN, Michael L. WILLIAMS, Jaylin K. ALEXANDER, and others known and unknown. Items to be seized include:

      a.  lists of contacts with any identifying information;

      b.  photographs, videos, or other media storage connected to drugs and firearms;

      c.  types, amounts, and prices of drugs and firearms purchased/sold;

      d.  any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

      e.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.    Any and all financial records connected to the purchase/sale of firearms or drugs;

3.    Documentation establishing the identity of the individuals in control of the residences;

2

4.     Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

5.     Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6.     Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7.     All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

8.     Lists of firearm and drug customers and related identifying information;

9.     Personal address books, telephone bills, photographs, letters, personal notes, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10.     Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11.     Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12.     Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called

3

numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

13.     Evidence of indicia of occupancy, residency, or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

14.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15.     Records evidencing the use of the Internet Protocol address, including:

a.   records of Internet Protocol addresses used;

b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4